# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KOREEN SCOTT** § <br> *Plaintiff* § <br> § <br> **v.** § <br> § <br> **CAPITAL AREA FAMILY** § <br> **VIOLENCE INTERVENTION** § <br> **CENTER, INC. d/b/a IRIS** § <br> **DOMESTIC VIOLENCE CENTER** § <br> **CENTER** § <br> *Defendant* § <br> § | CIVIL ACTION NO. _____ <br><br><br><br><br><br><br><br><br><br><br>**JURY DEMAND HEREIN** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES** Plaintiff, **KOREEN SCOTT**, through undersigned counsel, who files her Original Complaint against Defendant, **CAPITAL AREA FAMILY VIOLENCE INTERVENTION CENTER, INC. d/b/a IRIS DOMESTIC VIOLENCE CENTER.** She hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000e *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

1

b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

3. It is a jurisdictional requirement of this Court that the Plaintiff has filed a charge with the Equal Employment Opportunity Commission (EEOC) prior to instituting action. Plaintiff met this requirement by filing her EEOC charge on or about September 13, 2018 (Charge No. 461-2018-02840).

4. Pursuant to the face of the "Dismissal and Notice of Rights" ultimately received by counsel, and thus, Plaintiff, on August 7, 2019. *See* Exhibit A. Plaintiff is afforded 90 days from her receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Middle District of Louisiana, specifically in East Baton Rouge Parish, making this Court the most appropriate Division for this suit.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the City of Baton Rouge, State of Louisiana.

7. Plaintiff is African American and, as such, is a member of a protected class.

8. At all times relevant to this suit, Plaintiff worked as an Advocate for Defendant out of its facility located in Baton Rouge, Louisiana.

9. Defendant, **CAPITAL AREA FAMILY VIOLENCE INTERVENTION CENTER, INC. d/b/a IRIS DOMESTIC VIOLENCE CENTER** ("IRIS"), is Louisiana non-profit corporation licensed to conduct and conducting business in the State of Louisiana. The acts complained of in this Complaint occurred in East Baton Rouge Parish, State of Louisiana, where IRIS performs a significant amount of business.

## FACTUAL ALLEGATIONS

10. Plaintiff has over eighteen (18) years of experience in domestic violence work, and she is listed with the federal government as a National Advocate of Domestic Violence, which requires 30 hours of mandatory training each year.

11. Plaintiff began working for Iris in April 2011.

12. In approximately April 2017, the Iris Board of Directors hired John Price (Caucasian) as the new Executive Director.

13. During Plaintiff's employment with Iris, she was continually passed over for promotions in favor of Caucasian females who had little to no experience in the domestic violence field.

14. For example, Jane Sloan (Caucasian) was named the Director of Operations immediately after she was hired and despite the fact that she had no administrative or domestic violence experience. In fact, Ms. Sloan could barely type and had problems with basic computer literacy, which made her inefficient and difficult to train.

15. As an additional example, Suzanne Cox was named the Director of Client Services, despite the fact that she had no experience whatsoever in the domestic violence field.

16. Despite the fact that Plaintiff completed the same tasks, if not more, than the Caucasian women, the Caucasian women were compensated between five to seven dollars more per hour than Plaintiff.

17. Plaintiff's African American co-workers, all of whom had experience in domestic violence, were compensated approximately $10.30 per hour for three (3) years to perform the same tasks – case management and advocacy – as the Caucasian co-workers. Notably, however, the Caucasian women, many of which had no experience with domestic violence and had less than three (3) months' job experience, was paid between five and seven dollars more.

18. For example, Jane Sloan earned approximately $28.00 per hour, despite her computer illiteracy and inexperience in the domestic violence field. In contrast, Monica Adford, one of Ms. Scott's African American co-workers with domestic violence experience, earned between $15.00 and $16.00 per hour.

19. Upon good information and belief, Iris did not require the Caucasian women to be drug tested or background checked prior to hire; however, all of the African American females were required to have completed drug tests and background checks prior to commencing employment.

20. On or about August 16, 2017, Plaintiff complained to Bretta Walker and John Price about the placement of far less qualified, Caucasian, females in supervisory and other better-paying positions.

21. Almost immediately after Plaintiff lodged her complaint about the discriminatory placement, Price suggested that Plaintiff take a 90-day leave of absence to due her "stress

and anxiety." At this time, Mr. Price assured Ms. Scott that her job as a Case Manager would be secure and would be available upon her return from leave.

22. Acting in reliance on Price's assurances, Plaintiff began a leave of absence on September 1, 2017.

23. On October 3, 2017, after Plaintiff had begun her leave of absence,. Price called and advised her that her job was no longer secure, but that the two (2) would revisit Plaintiff's employment situation in the upcoming 60 days.

24. On or about December 1, 2017, Price terminated Ms. Scott due a purported "lack of work."

25. Suzanne Cox resigned in late October 2017 due to inappropriate relationship with a client; however, Price rehired Ms. Cox back in less than one (1) week later. Furthermore, Bretta Walker (Caucasian) was handed Suzanne Cox's position – she was promoted from a kitchen worker to a Director position, without having any experience in domestic violence work.

26. Within two (2) weeks of Plaintiff's termination, Price hired at least three (3) additional Advocates, indicating, quite unequivocally, that Iris had far beyond enough work to justify Plaintiff's continued employment therewith.

27. As a result of the unforeseen termination, Plaintiff filed for unemployment on August 5, 2018.

28. Plaintiff was later contacted by the Louisiana Workforce Commission, which informed Plaintiff that Price had indicated to the Louisiana Workforce Commission that: 1) she had resigned, rather than had been terminated; 2) she submitted a letter of resignation, which he (Price) personally accepted; 3) she quit her job in the middle of a staff meeting and

5

simply refused to return to work; 4) she was observed by a co-worker typing up a resignation letter and that her leave of absence had never been approved.

29. Plaintiff addressed her concern with the falsity of Ms. Price's statement in a Letter of Complaint, which was directed to the Iris Board of Directors on October 11, 2018.

30. After the Louisiana Unemployment Commission conducted further investigation, the entity concluded that Plaintiff was, in fact, on an approved leave of absence due to "medical reasons," and that, after she tried to return to work, she was laid off due to a purported lack of work. The entity also stated that Iris had failed to provide any paperwork to support its answers to Plaintiff's initial claim for Unemployment benefits.

31. Despite Plaintiff's extensive experience with domestic violence work, she did not obtain a collegiate degree. As such, and due to her termination from Iris, she has been effectively deprived of a future career in this field.

32. Upon information and belief, the positions in the domestic violence area now mandate that advocates and case workers obtain a degree, irrespective of how much experience a particular individual has acquired.

**FIRST CAUSE OF ACTION:
RACIAL DISCRIMINATION IN EMPLOYMENT**
*Pursuant to 42 U.S.C. 2000e et seq.*

33. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

34. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

35. Defendant is an "employer" subject to the provisions of Title VII. At all relevant times, IRIS was an entity engaged in an industry affecting commerce who had fifteen or more employees defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees. . . ." 42 U.S.C. § 2000e(b).

36. Plaintiff is African-American and is therefore a member of a protected class.

37. Plaintiff was qualified for her position as Advocate. Plaintiff was able to perform all functions of her job, and she did so for over ten (10) years without issue.

38. Plaintiff was passed over for promotional opportunities in favor of Caucasian individuals who possessed far less credentialing and experiencing the field of domestic violence. As such, Plaintiff suffered an adverse employment action for purposes of establishing a Title VII claim.

39. Plaintiff and other African American employees were compensated at a lower rate than that of Caucasian employees, many of which had less experience in the field. As such, Plaintiff suffered an adverse employment action for purposes of establishing a Title VII claim.

40. Plaintiff was terminated from her employment on December 1, 2017. As such, Plaintiff suffered an adverse employment action for purposes of establishing a Title VII claim.

41. Upon good information and belief, based on disparate treatment, Plaintiff alleges that she was subjected to unlawful discrimination on the basis of her race.

42. Plaintiff's race, African-American, was a determining factor in treating Plaintiff less favorably than Caucasian employees.

43. Plaintiff opposed what she perceived to be discriminatory treatment on the basis of her race. IRIS did absolutely nothing to rectify the situation.

44. Wherefore Plaintiff asks this Honorable Court to find **CAVSIC/IRIS DOMESTIC VIOLENCE CENTER** liable for the violation of Title VII of the Civil Rights Act of 1964.

## SECOND CAUSE OF ACTION: RETALIATION
*Pursuant to 42 U.S.C. § 2000e-3(a)*

45. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

46. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

47. Plaintiff advised Defendant, through several members of its management, of what she reasonably believed to constitute illegal discriminatory activity exhibited agents and/or employees on various occasions. Plaintiff directly addressed both Bretta Walker and John Price about the perceived discriminatory practices insofar as hiring, promoting, and compensation were concerned.

48. Rather than disciplining individuals who acted in a discriminatory manner, Defendant suggested that Plaintiff take a medical leave and, after she did so, terminated her as part of a reduction in force.

49. Within less than one (1) week after Plaintiff informed Bretta Walker and John Price that she opposed the discriminatory hiring practices and compensatory structure implemented by Iris, she was placed on leave of absence and thereafter terminated under the guise of a reduction in force.

50. At no point was any corrective action taken by Iris to address the discriminatory personnel practices exercised by the Iris administration.

51. In a similar regard, the Iris Board of Directors took no remedial action following its receipt of Plaintiff's Letter of Concern or Letter of Complaint.

52. Plaintiff's opposition to what she perceived to be workplace discrimination on the basis of race constitutes protected activity pursuant to Title VII.

53. Ultimately, after Plaintiff complained of the racial discrimination to management, she was terminated under the guise of a reduction in force.

54. The racial discrimination culminated on December 1, 2017, at which time Plaintiff was terminated under the guise of a "poor performance" evaluation.

55. As set forth above, Defendant, through its agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of her employment in retaliation for her opposing what she believed to be unlawful conduct on various occasions.

56. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

57. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

58. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental

anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

59. Wherefore Plaintiff asks this Honorable Court to find Defendant, **CASVIC/IRIS DOMESTIC VIOLENCE CENTER,** liable for the violation of 42 U.S.C. § 2000e-3(a).

## THIRD CAUSE OF ACTION:
## VIOLATION OF 42 U.S.C. § 1981

60. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

61. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts with respect to race. 42 U.S.C. § 1981(a). The statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

62. Plaintiff incorporates the contents of his First and Second Causes of Action by reference as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

63. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. § 1981, Defendant is liable for depriving Plaintiff of right, privileges or immunities secured by the Constitution and law.

*{Remainder of Page Intentionally Left Blank}*

## PRAYER

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Reasonable attorney's fees, with conditional awards in the event of appeal;

(c) Pre-judgment interest at the highest rate permitted by law;

(d) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(e) Costs, including expert fees;

(f) Reasonable and necessary medical care and expenses in the past and future;

(g) Mental anguish damages in the past and future;

(h) Punitive damages pursuant to 42 U.S.C. § 1981;

(i) Injunctive relief; and

(j) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

*{Signature Page to Follow}*

                **Respectfully Submitted**,

                **SUDDUTH & ASSOCIATES, LLC**
                Attorneys-at-Law
                1109 Pithon St.
                Lake Charles, Louisiana 70601
                (337) 480 - 0101 (*Telephone*)
                (337) 419 - 0507 (*Facsimile*)

**BY:** *James E. Sudduth, III*
                **JAMES E. SUDDUTH, III, #35340**
                **KOURTNEY L. KECH, #37745**
                **PIERCE A. RAPIN, #38579**
                *Counsel for Plaintiff*